**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| THOMAS Z. LEWIS, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:05-cv-352 PS |
| | ) | |
| JOEL SILVERMAN, in his official capacity as Commissioner of the Indiana Bureau of Motor Vehicles, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Last year the Indiana Bureau of Motor Vehicles decided to close a full-service license branch in Gary, Indiana. A few months later, the BMV replaced it with a limited service facility. That decision spawned this putative class action in which several Gary residents and businesspeople complain that, by closing the full-service license branch, the BMV, its commissioner, and other officers and agencies of the Indiana state government, have run afoul of federal law and the United States constitution. Before the Court is Defendants' motion to dismiss the case for lack of jurisdiction under Rule 12(b)(1) and failure to state a claim upon which relief may be granted under Rule 12(b)(6). [DE 29] The motion is granted in part and denied in part as explained below.

**BACKGROUND**

**A. Facts Alleged by Plaintiffs**

Plaintiffs' Amended Complaint alleges the following facts, which are taken as true for present purposes. Plaintiffs Thomas Z. Lewis, Le'Barron Burton and Nina Burton are residents

of Gary, Indiana. [DE 23] Plaintiffs Dawn Geeter and Patricia Boyd conduct business in Gary. *Id*. Plaintiffs have sued two state agencies (the Indiana Bureau of Motor Vehicles and the Indiana Economic Development Corporation) and three individuals in their official capacities (Defendant Joel Silverman, in his official capacity as Commissioner of the Indiana Bureau of Motor Vehicles; Defendant Mitch Daniels, in his official capacity as Governor of the State of Indiana; and Defendant Mickey Maurer, in his official capacity as Director of the Indiana Economic Development Corporation). *Id*.

Plaintiffs are African-Americans who reside and/or conduct business in Gary. *Id*. Gary sits in Lake County, Indiana, a racially segregated region. *Id*. In the last fifteen years, Gary has experienced an economic depression due to the closing or downsizing of the steel industry. *Id*. Gary has a high unemployment rate, a high poverty rate, and numerous economically depressed areas. *Id*.

On September 17, 2005, Defendants closed a full-service, BMV license branch located at 1350 Broadway in Gary. *Id*. The closure of the branch caused Plaintiffs to incur additional costs in traveling to surrounding communities in order to receive BMV services that are no longer available in Gary. *Id*. Some Gary residents must now travel 30 miles to reach the nearest full-service license branch. *Id*. In addition, while the full-service branch was open, it helped integrate Lake County by allowing non-minority individuals from surrounding areas to come to Gary to conduct business at the branch. *Id*. By closing the full-service license branch in Gary, Defendants continued the history of segregation in Lake County, and that decision is alleged by the Plaintiffs to have been arbitrary and capricious. *Id*. The closure of the full-service license

branch had a disparate impact on the people of Gary and it caused Plaintiffs to suffer irreparable harm. *Id*.

Plaintiffs' Amended Complaint asserts seven counts, some of which appear to overlap. Count One alleges discrimination in the provision of state services under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983. Counts Two and Four allege discrimination under the Fair Housing Act, 42 U.S.C. §§ 3604, 3605, and 24 C.F.R. § 100.65(b). Count Three alleges discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Count Five alleges Defendants violated the Commerce Clause by perpetuating racial segregation and discrimination among the communities in Lake County, Indiana. Count Six alleges Defendants violated the Equal Protection Clause by treating Gary differently than other cities with similar populations. Count Seven appears to contain two claims: 1) that the Indiana statute authorizing the BMV Commissioner to reduce the number of license branches in the state is unconstitutionally vague; and 2) that Defendants violated Plaintiffs' First Amendment rights by prematurely ending a public meeting regarding the proposed closure of the branch. [DE 23]

Plaintiffs' Amended Complaint does not contain a prayer for relief. *Id*. However, their original complaint requested various forms of relief, including a temporary restraining order (which the Court already has denied), a preliminary injunction (for which Plaintiffs have yet to file a motion), a declaratory judgment that Defendants have violated federal law, punitive damages, costs, and attorneys' fees. [DE 1]

Defendants seek to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), Defendants argue the Court lacks subject matter jurisdiction because Plaintiffs have no standing, because their claims are not ripe, and because their claims

are moot. Defendants also urge the Court to refrain from exercising jurisdiction on separation of powers grounds. Under Rule 12(b)(6), Defendants argue that Plaintiffs fail to state a single claim upon which relief can be granted.

**B. Procedural History**

On September 14, 2005, a few days before the BMV closed the full-service license branch in Gary, Plaintiffs filed a Verified Complaint and requested a temporary restraining order to stop the BMV from closing the branch. [DE 1] After an *ex parte* hearing that same day, the Court denied the request for a TRO in a written order. [DE 8]

On October 28, 2005, Defendants moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. [DE 17, 18] On November 3, 2005, Magistrate Judge Cherry held a preliminary pretrial conference. [DE 20] Plaintiffs asked for 60 days to amend their complaint and Defendants asked that discovery be stayed while their motion to dismiss was pending. Judge Cherry granted both requests. Plaintiffs filed their amended complaint on January 17, 2006. [DE 23]

On February 15, 2006, Defendants moved to dismiss the amended complaint alleging essentially the same grounds as before. [DE 30] In response, Plaintiffs filed a motion under Rule 56(f) to stay briefing on the motion to dismiss in order for Plaintiffs to conduct discovery. [DE 31] Judge Cherry stayed briefing on the motion to dismiss pending a ruling on Plaintiffs' Rule 56(f) motion. [DE 32] This Court denied Plaintiffs' Rule 56(f) motion and resumed briefing on the motion to dismiss, which the parties completed on July 28, 2006. [DE 35, 39]

## DISCUSSION

### A. Rule 12(b)(1) and 12(b)(6) Standards

Rule 12(b)(1) requires dismissal if a court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Rule 12(b)(6) provides for dismissal if a complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In both contexts, the district court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Moranski v. General Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). If the plaintiff can prove no set of facts that would entitle her to relief, dismissal under Rule 12(b)(6) is appropriate. *Hernandez v. City of Goshen, Ind.,* 324 F.3d 535, 537 (7th Cir. 2003).

Federal complaints plead claims rather than facts. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006). Pleadings in federal court need not allege facts corresponding to each element of a statute. *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005). "It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits . . . that will let the defendant investigate. A full narrative is unnecessary." *Kolupa*, 438 F.3d at 714. "Any district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . . ' should stop and think: What rule of law requires a complaint to contain that allegation?" *Doe*, 429 F.3d at 708. A plaintiff receives the benefit of "any fact that could be established later consistent with the complaint's allegations." *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006).

Although plaintiffs can plead conclusions, the conclusions "must provide the defendant with at least minimal notice of the claim." *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir.

1995). A litigant can plead himself out of court by alleging facts showing that he has no claim. *Id.*; *R.J.R. Services, Inc. v. Aetna Casualty & Surety Co.*, 895 F.2d 279, 281 (7th Cir. 1988) (the district court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim").

**B. Jurisdictional and Rule 12(b)(1) Issues**

The Court starts with Defendants' jurisdictional arguments.

**1. Separation of Powers**

Defendants first ask the Court to refrain from exercising jurisdiction based on the separation of powers doctrine. Defendants submit that if Plaintiffs' case were allowed to proceed, then the Court would violate the separation of powers doctrine by interfering in matters reserved for the executive branch of the Indiana state government. The Court is not persuaded.

Any exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy as federal courts lack the power to render advisory opinions. *U.S. Nat'l Bank of Oregon v. Independent Ins. Agents*, 508 U.S. 439, 446 (1993). As long as there is a case or controversy, this is enough to protect the principle of separation of powers and properly limits the role of the judiciary in a democratic society. *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994), *citing Allen v. Wright*, 468 U.S. 737, 750 (1984).

By filing suit, Plaintiffs are not asking the Court to interfere with the job of the executive branch. Rather, Plaintiffs are seeking relief from the Court for alleged violations of federal law. If Plaintiffs' claims have merit, it is up to this Court to uphold federal law. If Plaintiffs' claims lack merit (or fail even to state a claim), they will be dismissed in Defendants' favor.

None of the cases cited by Defendants compels dismissal on separation of powers grounds. For instance, in *Schroeder v. Hamilton School Dist.,* 282 F.3d 946, 951 (7th Cir. 2002), the Seventh Circuit declined to "judicially amend" Title VII to provide for a cause of action based on sexual orientation. The *Schroeder* court ruled it is "wholly inappropriate, as well as constituting a clear violation of the separation of powers, for this court, or any other federal court, to fashion causes of action out of whole cloth, regardless of any perceived public policy benefit." *Id*. Plaintiffs here are not asking the Court to amend any statutes or to fashion any causes of action out of whole cloth. Instead, they ask the Court to enforce federal statutes and to remedy perceived violations of the United States Constitution. Dismissal on separation of powers grounds is not warranted in this case.

**2. Standing**

Article III, § 2, of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998). Without jurisdiction, a court cannot proceed at all in a case and "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id*.

Plaintiffs invoked federal jurisdiction so they have the burden to establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A party has standing if it can demonstrate: 1) an injury in fact (*i.e.* harm that is concrete and actual or imminent, not merely conjectural or hypothetical); 2) causation (*i.e.* a fairly traceable connection between the plaintiff's injury and the challenged conduct); and 3) redressability (*i.e.* a likelihood that the injury will be redressed by a favorable decision). *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). Each element of standing "must be supported in the same way as any other matter on

which the plaintiff bears the burden of proof, with the manner and degree of evidence required at successive stages of litigation." *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice because, on a motion to dismiss, courts presume that general allegations embrace those specific facts that are necessary to support the claim." *Id*., *citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883-889 (1990).

It is a close call whether the Plaintiffs have alleged an injury in fact. Nevertheless, given the procedural posture of the case – i.e. a motion to dismiss – the benefit of the doubt goes to the Plaintiff. Accordingly, we find that the Plaintiffs have made general allegations sufficient to confer standing, at least at this stage of the lawsuit. *See, e.g.,* DE 23, Count One, ¶ 9 ("by closing the full service license branch, the plaintiffs have suffered the additional costs of traveling to surrounding communities for full service license branch services which should be provided in Gary"). Thus, Plaintiffs have alleged an injury in fact; they have alleged that Defendants caused it; and they seek injunctive and declaratory relief that would redress it.

Whether Plaintiffs can substantiate these allegations, prove their claims, and obtain such relief is a different issue. Indeed, should Defendants later challenge Plaintiffs' standing as a factual matter, then Plaintiffs must present competent proof that they have standing. *Lee*, 330 F.3d at 468. For now though, Plaintiffs have pled enough to confer standing. *Id*. (Rule 12(b)(1) motion to dismiss for lack of standing did not raise factual challenge to the plaintiff's standing; the plaintiff's only burden at that stage was to plead sufficient facts to confer standing).

**3. Mootness**

Defendants next argue the Court lacks jurisdiction because Plaintiffs' claims are moot. According to Defendants, the case is moot because the BMV opened a limited service license branch in Gary shortly after it closed the full-service license branch.

Meaningful relief is all the relief that need be possible to avert a finding of mootness. *Laskowski v. Spellings*, 443 F.3d 930, 934 (7th Cir. 2006). When making a mootness determination, a court should consider not whether it may return the parties to the status quo, but rather, whether it is still possible to fashion some form of meaningful relief to the plaintiff in the event he prevails on the merits. *United States v. Segal*, 432 F.3d 767, 773 (7th Cir. 2005). The mere cessation of the conduct sought to be enjoined does not moot a suit to enjoin the conduct. *Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006). A case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated. *Id.*, *citing United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

The Court does not follow Defendants' reasoning as to mootness. Defendants concede that the new license branch in Gary provides less services than the old one. Thus, there are at least some BMV services no longer available in Gary that used to be available in Gary. As minimal as they may be, it is these additional services on which Plaintiffs' claims are based. Furthermore, to the extent Plaintiffs prevail in this case, it is possible that this Court could fashion some sort of meaningful relief to Plaintiffs in the form of an injunction or declaratory relief. If the BMV had re-opened a full-service license branch in Gary, then a mootness

argument would have more traction. But the BMV's opening of a limited service license branch in Gary after closing a full-service license branch there does not moot Plaintiffs' claims.

**4. Ripeness**

Defendants also argue that Plaintiffs' claims are not ripe. According to Defendants, the impact, if any, of BMV's closure of the full service license branch and subsequent opening of a limited service branch is unknown. Therefore, the argument goes, there is no ripe controversy to support subject matter jurisdiction. Again the Court disagrees. "A claim is not ripe for adjudication if it rests upon contingent events that may or may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). As this Court reads the Amended Complaint, Plaintiffs claim to have suffered injury based upon a past event, namely the closure of the full-service license branch in Gary. There is nothing contingent about that event. Therefore, Plaintiffs' claims cannot be dismissed on ripeness grounds.

**C. Rule 12(b)(6) Issues**

**1. Count One**

In Count One, Plaintiffs assert a § 1983 claim against all Defendants. Section 1983 establishes liability for a "person" who deprives another of a constitutional right. 42 U.S.C. § 1983. It is well-settled that a state is not a "person" for purposes of § 1983. *See Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003); *Illinois Ass'n of Mortg. Brokers v. Office of Banks*, 308 F.3d 762, 765 (7th Cir. 2002). Nor are state officials when they are sued in their official capacity. *See Williams*, 336 F.3d at 580; *Sanville v. McCaughtry*, 266 F.3d 724, 732-33 (7th Cir. 2001) ("Official capacity suits are actions against the government entity of which the official is a

part . . . . To sue the defendants in their official capacities means [plaintiff] is really suing the state entit[y].").

Both the Bureau of Motor Vehicles and the Indiana Economic Development Corporation are state agencies. Plaintiffs do not contend otherwise. *See* IND. CODE § 4-13-1-1 (a department of the state government is a "state agency"). Thus, Plaintiffs' § 1983 claim against the BMV and IEDC must be dismissed because it does not fall within the statute. In addition, all claims for damages against the individual defendants in their official capacity must be dismissed for the same reason.[1]

To the extent Plaintiffs seek *prospective* relief against state officers for ongoing or anticipated violations of their constitutional rights, Plaintiffs are not barred at the outset from proceeding. Section 1983 permits official-capacity suits that seek prospective relief against state officials. *Williams*, 336 F.3d at 581; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989). Although the Eleventh Amendment generally bars suits against states in federal courts, the Supreme Court created an exception in *Ex Parte Young* so that a "private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law." *Ameritech Corp. v. McCann*, 297 F. 3d 582, 585-86 (7th Cir. 2002), *quoting Ex parte Young*, 209 U.S. 123 (1908). In deciding whether the *Young* exception applies, a court need only

[1] Although states and their agencies are generally immune from suit under the Eleventh Amendment, we need not reach that issue because Plaintiffs' § 1983 claim does not fall within the bounds of the statute. *See Williams*, 336 F.3d at 581 (7th Cir. 2003) ("[A]ny constitutional [*i.e.* Eleventh Amendment] problem that may exist is subordinate to the statutory deficiency. Suits against states for damages should be resolved on the ground that they do not come within § 1983, not because states are protected by the Eleventh Amendment."); *accord Omosegbon v. Wells*, 335 F.3d 668, 672-73 (7th Cir. 2003).

conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Verizon Maryland, Inc. v. Public Service Comm. of Maryland*, 535 U.S. 635, 645 (2002). For § 1983 purposes, declaratory relief falls within the definition of prospective relief. *See Ameritech*, 297 F.3d at 588.

Applying these principles to Plaintiffs' § 1983 claim, any claim for damages against the individual defendants in their official capacity must drop out. In other words, the only claim allowed under § 1983 and not barred by the Eleventh Amendment is a claim for prospective injunctive relief against the individual defendants in their official capacity.

To prevail under § 1983, Plaintiffs need to establish that (1) they held a constitutionally protected right; (2) they were deprived of this right in violation of the Constitution; (3) Defendants intentionally caused this deprivation; and (4) Defendants acted under color of state law. In their Amended Complaint, Plaintiffs allege enough to state a claim under § 1983. Plaintiffs allege that Defendants violated their rights under the Equal Protection Clause by closing the full-service license branch in Gary and thereby treating Plaintiffs and other Gary residents differently from other Indiana citizens. These allegations satisfy Rule 8.

Defendants argue that Plaintiffs have alleged only disparate impact but not disparate treatment. Defendants read Plaintiffs' allegations too narrowly. At this stage, the Court must draw all reasonable inferences in Plaintiffs' favor. In doing so, the Court reads the Amended Complaint to allege both disparate impact *and* disparate treatment. *See, e.g.,* DE 23 at 6, ¶¶ 3-4 (allegation that, by closing the full-service license branch in Gary, "the Defendants have treated Gary differently.") Moreover, the absence of the word "intentional" does not defeat Plaintiffs' claim because Plaintiffs need not allege every element of a claim. *See Walker v. Thompson*, 288

F.3d 1005, 1007 (7th Cir. 2002) ("[T]here is no requirement in federal suits of pleading the facts or the elements of a claim"). Plaintiffs face a steep climb to prevail on a § 1983 claim. But they have alleged enough to survive Rule 12(b)(6).[2]

**2. Fair Housing Act Claims**

In Counts Two and Four, Plaintiffs assert claims under the Fair Housing Act, 42 U.S.C. §§ 3604 and 3605. Section 3604 makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges *of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith*, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b) (emphasis added). Section 3605 makes it unlawful for "any person or other entity *whose business includes engaging in residential real estate-related transactions* to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605 (emphasis added).

The Court is at a loss to know what exactly the Fair Housing Act has to do with this case. Clearly, no "sale or rental of a dwelling" is alleged to be part of this case – nor could it. Although § 3604 prohibits discrimination in the "provision of services or facilities," the plain language of the statute indicates that the "provision of services or facilities" must be "in connection" with the sale or rental of a dwelling. 42 U.S.C. § 3604. Again, no sale or rental of a dwelling is remotely at play in this case. Thus, Plaintiffs fail to state a claim under § 3604.

---

[2] Defendants argue (and Plaintiffs do not dispute) that the § 1981 and § 1983 claims are to be treated alike. *See Booker v. Bd. of Ed., Baldwinsville Cent. School Dist.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002). Indeed, Plaintiffs have merged their § 1981 and § 1983 claims into a single count – Count One. Because the parties are content to treat the two claims as one, the Court will not address the § 1981 claim separately.

Plaintiffs fare no better under § 3605. Accepting Plaintiffs' allegations as true, the Court cannot conceive of any "person or entity whose business includes engaging in residential real estate-related transactions" who could be subject to liability. 42 U.S.C. § 3605(b). Because no set of facts consistent with the Amended Complaint would entitle Plaintiffs to relief under the Fair Housing Act, Counts Two and Four are dismissed with prejudice.

**3. Title VI Claim**

Count Three asserts a claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Section 2000d provides that "[n]o person in the United States shall, on the ground of race, . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Plaintiffs allege upon information and belief that the BMV received federal assistance. Plaintiffs further allege that "[i]n predominately white areas with large populations, the Defendants seek to provide better services and make better decisions regarding the construction, use and operation of full service license branches." [DE 23] Conversely in Gary, Plaintiffs allege, Defendants "seek to disengage services for Gary citizens who greatly need the economic opportunities and services which the license branch provides." *Id*. Plaintiffs allege Defendants' decision to eliminate the full service branch in Gary "has had a disparate impact on Gary's commerce between local communities and other cities in the state." *Id*.

Private individuals may sue to enforce § 2000d and obtain both injunctive relief and damages. *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001). However, § 2000d prohibits intentional discrimination only; there is no private right of action under § 2000d for disparate impact claims. *Id*. at 279, 293. Defendants seek to dismiss of Count Three because Plaintiffs do

not allege intentional discrimination but instead allege that the closure of the full service license branch had a disparate impact on them. Again, Defendants read the Amended Complaint too narrowly. Accepting their allegations as true and drawing all reasonable inferences in their favor, Plaintiffs have stated a claim for discrimination under § 2000d. Although Plaintiffs plainly allege disparate impact, they also allege disparate treatment. *See* DE 23 at 8, ¶ 14 (incorporating by reference allegation that "Defendants have treated Gary differently.") Plaintiffs have their work cut out to establish intentional discrimination, but they have alleged enough to move forward on the claim.

**4. Commerce Clause Claim**

Count Five asserts a claim under the Commerce Clause of the Constitution. The Commerce Clause grants to Congress the power to "regulate commerce with foreign nations, and among the several states." U.S. Const. art. I, § 8, cl. 3. Where Congress has not exercised its powers under the Commerce Clause, states generally are free to legislate in that area unless or until Congress decides to take action. *Endsley v. City of Chicago*, 230 F.3d 276, 284 (7th Cir. 2000). The Supreme Court has read the Commerce Clause to create not only affirmative powers to legislate, but also a negative implication that limits state action as well. *See, e.g., Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979). The negative implication is known as the "dormant Commerce Clause." *Id*. The dormant Commerce Clause is used to scrutinize state regulations that burden interstate commerce, even absent any conflicting congressional legislation. *Endsley*, 230 F.3d at 284. The Commerce Clause creates a right of action for those injured by regulations that exceed such limitations. *See Dennis v. Higgins*, 498 U.S. 439, 450 (1991).

When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, the statute is generally struck down without further inquiry. *See Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 579 (1986). On the other hand, when a statute has only indirect effects on interstate commerce and regulates evenhandedly, courts examine whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. *Id.*; *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Count Five fails to set forth a claim for relief under the Commerce Clause. As a threshold matter, Plaintiffs do not identify in Count Five the particular state statute for which they seek relief. Even if the Court were to assume that it is IND. CODE 9-16-1-2.5 – the Indiana statute that authorizes the BMV to reduce the number of license branches in the state – Plaintiffs' claim still fails. On its face, the statute does not directly discriminate against interstate commerce. *See* IND. CODE 9-16-1-2.5. Moreover, the State has a legitimate interest in controlling and adjusting the number of license branches it maintains throughout the state. The Court cannot conceive of any set of facts under which the statute would place any burden on interstate commerce, never mind a burden that clearly exceeds the local benefits of the statute. Accordingly, Count Five is dismissed for failure to state a claim.

**5. Equal Protection Claim**

Count VI asserts a claim based on the Equal Protection Clause. Plaintiffs do not challenge the constitutionality of any statute on equal protection grounds. Rather, Plaintiffs allege that Defendants are treating Gary differently than certain other cities with large populations, all of which have one or more full-service license branches. [DE 23 at 6] The

Court sees no meaningful difference between Count VI and Count I (the § 1983 claim), which also alleges an equal protection violation. Because the Counts are duplicative, the Court will treat them as one for purposes of summary judgment and/or trial.

**6. Count VII**

Finally, in Count VII, Plaintiffs challenge the constitutionality of IND. CODE 9-16-1-2.5 and also assert a claim under the First Amendment. Neither claim is viable.

*a. Vagueness Challenge*

Plaintiffs allege that IND. CODE 9-16-1-2.5 is unconstitutional because it is vague and overbroad. The statute at issue provides as follows: "The number of license branches may not be reduced in a county below the number in existence on January 1, 2001, unless the bureau holds a public hearing in the county and receives unlimited public testimony before the commissioner on the merits of closing the branch that the bureau proposes to close in the county." IND. CODE 9-16-1-2.5. It is difficult to understand how this could be construed as vague.

A law is void for vagueness if it "fails to give fair warning of what is prohibited, if it fails to provide explicit standards for the persons responsible for enforcement and thus creates a risk of discriminatory enforcement, and if its lack of clarity chills lawful behavior." *Anderson v. Milwaukee County*, 433 F.3d 975, 978 (7th Cir. 2006). Stated differently, statutes present a constitutional issue of vagueness when they deter constitutionally protected activity, fail to provide even minimum guidance as to people's legal obligations, or give law enforcers excessive discretion that might be exercised in arbitrary or invidious ways. *Coe v. County of Cook*, 162 F.3d 491, 496 (7th Cir. 1998) (affirming 12(b)(6) dismissal of claim challenging a hospital's

abortion guidelines as unconstitutionally vague). If a statute imposes only civil rather than criminal penalties, the Constitution affords even greater latitude "because the consequences of imprecision are qualitatively less severe." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982). A party raising a facial challenge to a statute on vagueness grounds "must demonstrate that the law is impermissibly vague in all of its applications." *Koutnik v. Brown*, 456 F.3d 777, 781 (7th Cir. 2006).

There is nothing vague about the statute in question. It spells out precisely what must be done if the BMV commissioner seeks to lower the number of license branches in a county: the commissioner must hold a public hearing in the county and receive unlimited public testimony on the subject. The Indiana legislature could not have written the statute more clearly. Plaintiffs complain that the statute does not set out what effects, if any, the testimony at the public hearing will have on a decision to close a branch. So, what? The statute merely attempts to ensure that the residents of any county in which a branch closure is being contemplated have a forum available to make their views regarding the closure of the branch known to the BMV. Even if the BMV were to act in a manner inconsistent with the views of the county residents (as Plaintiffs have alleged here), that does not mean that the statute is vague. Therefore, Plaintiffs' vagueness challenge is dismissed.

*b. First Amendment Claim*

Plaintiffs' First Amendment claim also fails. According to Plaintiffs, "their first amendment rights were violated by the public meeting having to end based on the auditorium not being available after a certain time." [DE 23, ¶ 48] Plaintiffs fail to specify whether their First Amendment claim is brought under § 1983, but the Court is willing to give Plaintiffs the benefit

of the doubt. *See Davis v. Durham Mental Health*, 320 F. Supp.2d 378, 404 n.28 (M.D.N.C. 2004) (district court should not dismiss a First Amendment claim on technical argument that it was not brought through § 1983, and should instead deem a plaintiff's complaint to allege the First Amendment claim as one brought through § 1983 rather than as a direct action under the First Amendment).

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const., amend. I. The freedom of speech clause applies to the states by operation of the Fourteenth Amendment's due process clause. *Joelner v. Village of Washington Park,* 378 F.3d 613, 619 (7th Cir. 2004). To prevail on a First Amendment claim under § 1983, a plaintiff must establish that (1) its conduct is deserving of First Amendment protection; and (2) the defendants' allegedly unlawful conduct was motivated by or substantially caused by plaintiff's exercise of free speech. *See Estate of Conner by Conner v. Ambrose*, 990 F. Supp. 606, 614 (N.D. Ind. 1997), *citing Rattner v. Netburn*, 930 F.2d 204, 208 (2d Cir. 1991).

Plaintiffs' First Amendment claim is fundamentally flawed. Plaintiffs are not claiming that IND. CODE 9-16-1-2.5 unconstitutionally restricted their speech, nor do Plaintiffs claim that Defendants somehow restricted their speech regarding the closure of the license branch. Rather, Plaintiffs allege that the meeting convened by the BMV did not last long enough for Plaintiffs to share all of their views with the BMV. The difference is meaningful. A state's refusal to listen to someone speak is not the same as the state restricting someone's speech.

At bottom, Plaintiffs complain that Defendants failed to follow IND. CODE 9-16-1-2.5, which requires the BMV to receive "unlimited" public testimony. However, BMV's failure to follow the statute (again, taking Plaintiffs' allegations as true) does not amount to a First

Amendment violation. Perhaps under Indiana law Plaintiffs have some recourse for the BMV's alleged failure to receive "unlimited" public testimony, but such a claim is not presently before the Court. Accepting Plaintiffs' allegations as true, the BMV's decision to end the meeting prematurely cannot amount to a violation of Plaintiffs' First Amendment rights. Count Seven is dismissed accordingly.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the amended complaint [DE 29] is **GRANTED IN PART AND DENIED IN PART.** Counts Two, Four, Five, and Seven are hereby **DISMISSED**.

**SO ORDERED.**

ENTERED: September 19, 2006

s/ Philip Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT